UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MICHAEL DARREL MARLOW,                    )
                                          )
          Plaintiff,                      )
                                          )
v.                                        )          No. 3:17-cv-435-TAV-HBG
                                          )
NANCY A. BERRYHILL,                       )
Acting Commissioner of Social Security,   )
                                          )
          Defendant.                      )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings

and Memorandum in Support [Docs. 19 & 20] and Defendant's Motion for Summary Judgment

and Memorandum in Support [Docs. 21 & 22].  Michael Darrel Marlow ("Plaintiff") seeks judicial

review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of

Defendant Nancy A. Berryhill ("the Commissioner").  For the reasons that follow, the Court will

**RECOMMEND** that Plaintiff's motion [Doc. 19] be **DENIED** and the Commissioner's motion

[Doc. 21] be **GRANTED**.

## I.      PROCEDURAL HISTORY

On March 12, 2013, Plaintiff filed an application for supplemental security income benefits

pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a period of

disability that began on July 1, 2003.  [Tr. 23, 99, 178–82].[1]  After his application was denied

_____

[1] Plaintiff previously filed an application for supplemental security income on January 3,
2011.  [Tr. 72].  After Plaintiff's claim was denied initially and upon reconsideration, Plaintiff

initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 131]. A hearing was held on March 9, 2016. [Tr. 40–68]. On July 22, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 23–34]. The Appeals Council denied Plaintiff's request for review on August 4, 2017 [Tr. 1–7], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on October 2, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.   ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant has not engaged in substantial gainful activity since March 12, 2013, the alleged onset date (20 CFR 416.971 *et seq*.).
>
> 2.  The claimant has the following severe impairments: obesity, nearsighted vision, partial toe amputation, hypertension, pars defect, affective disorder, personality disorder, and alcohol abuse (20 CFR 416.920(c)).
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he cannot climb ladders, ropes, or scaffolding, and he can only occasionally climb ramps and stairs, as well as being capable of occasional balancing, stooping, kneeling, crouching and crawling. He is capable of occasional overhead reaching, pushing, and pulling using his right upper extremity. His vision precludes jobs requiring accurate judgments of distance and speed. The claimant is able to

---

filed a written request for a hearing on November 7, 2011. [*Id.*]. However, after a hearing, ALJ Richardson found that Plaintiff was not disabled on May 29, 2013. [Tr. 72–83].

2

work with large objects, able to do sustained detail work, and he is capable of working with small objects. He is able to avoid ordinary workplace hazards, such as boxes on the floor, doors ajar, or approaching people are [sic] vehicles. The claimant is limited to understanding, remembering, in carrying out simple, routine, and repetitive tasks performed in a work environment free from fast-paced work. His work should entail only simple work-related decisions and with few, if any, workplace changes. The claimant should not interact with the general public, but he is capable of occasional interaction with coworkers and supervisors.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on October 13, 1961 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 12, 2013, the date the application was filed (20 CFR 416.920(g)).

[Tr. 25–34].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and

whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.  DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

4

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

5

146 (1987)).

## V. ANALYSIS

First, Plaintiff claims that the ALJ erred in failing to find that he suffers from borderline intellectual functioning ("BIF") as a severe impairment, as he asserts that the ALJ was bound by the previous ALJ's determination. [Doc. 20 p. 6–10]. Therefore, Plaintiff contends that the ALJ did not sufficiently consider Plaintiff's social functioning, and improperly deviated from a previous RFC determination. [*Id.* at 10–13]. Next, Plaintiff asserts that the ALJ did not consider the applicability of Listing 12.05 [*Id.* at 6], as well as failed to properly develop the record with respect to Plaintiff's intellectual functioning [*Id.* at 9–10]. Lastly, Plaintiff claims that the ALJ improperly found that he was able to work the specified jobs, as the ALJ's RFC determination was in conflict with the jobs identified by the vocational expert ("VE"). [*Id.* at 13–15]. The Court will address each allegation of error in turn.

### A. Incorporating Plaintiff's Prior RFC Assessment

Plaintiff contends that the ALJ erred by not adopting the previous ALJ's findings, as the ALJ was bound by the previous ALJ's finding that Plaintiff's BIF constituted a severe impairment. Further, Plaintiff asserts that this failure constitutes harmful error because the ALJ failed to consider Plaintiff's BIF in Steps Three through Five. Lastly, Plaintiff claims that the ALJ did not sufficiently consider evidence of Plaintiff's social limitations in determining his RFC, as the ALJ did not base his opinion on proven change in circumstances from the prior ALJ's determination.

In 2013, ALJ Richardson issued an unfavorable ruling finding that Plaintiff was not disabled, but that Plaintiff's BIF constituted a severe impairment. [Tr. 74]. Additionally, ALJ Richardson found that Plaintiff had the RFC to perform a modified range of light work, including in relevant part, that Plaintiff was limited to performing simple, repetitive, non-detailed tasks, his

6

coworker contact should be casual and superficial, he should have no contact with the public, his supervision should be direct and non-confrontational, and that changes in the workplace should be infrequent and gradually introduced. [Tr. 76].

After Plaintiff filed a second application for benefits, ALJ Dowd found that Plaintiff's BIF did not constitute a severe impairment, and detailed that Plaintiff could perform a modified range of light work, including finding that Plaintiff was limited to understanding, remembering, in carrying out simple, routine, and repetitive tasks performed in a work environment free from fast-paced work, involving only simple work-related decision and few, if any, workplace changes, and that Plaintiff should not interact with the general public but is capable of occasional interaction with coworkers and supervisors. [Tr. 27].

The Sixth Circuit has directed that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). Following *Drummond*, the Commissioner issued AR 98-4(6), which provides, in part:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

Social Security Acquiescence Ruling 98–4(6), 1998 WL 283902, at *3 (June 1, 1998).

However, the Sixth Circuit recently clarified the meaning of *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), explaining how "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new

7

regulatory condition." *Id.* at 932. Therefore, res judicata does not "prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931. The Sixth Circuit noted that the doctrine of res judicata bars relitigation of the same claim but not litigation of a new claim, pointing out that "[r]es judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Id.* at 933 (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998)). Thus, "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Id.*

Accordingly, "[c]ourts applying *Earley* to ALJ decisions issued before that case have asked whether the ALJ, despite purporting to follow *Drummond*, gave the new evidence a fresh look. If so, then the ALJ's decision satisfied *Earley*; if not, then remand was appropriate." *Johnson v. Comm'r of Soc. Sec.*, No. 2:17-cv-13126, 2018 WL 6440897, at *15 (E.D. Mich. Oct. 22, 2018) (collecting cases), *report and recommendation adopted by*, 2018 WL 6434778 (E.D. Mich. Dec. 07, 2018).

In the present case, the ALJ noted that he considered the previous ALJ's determination that Plaintiff's BIF was a severe impairment while determining Plaintiff's RFC. [Tr. 28]. However, ALJ Dowd detailed that "while it has been estimated that [Plaintiff] functions within [the BIF] range, the record contains no valid IQ scores to establish this impairment, and consequently, the undersigned finds insufficient evidence to establish borderline intellectual functioning is severe." [*Id.*]. Ultimately, the ALJ considered the new evidence of the additional consultative examinations performed by Dr. Brown, Dr. Dake, and Dr. Uzzle, and then performed a *de novo* review of the total evidence relating to Plaintiff's intellectual and social functioning.

8

First, ALJ Dowd properly reviewed the previous opinion of Alice Garland, M.S., L.S.P.E., who performed a consultative evaluation of Plaintiff on April 6, 2011. [Tr. 30, 357]. Ms. Garland administered the WAIS-IV and WRAT-IV tests but could not provide a full-scale IQ score because Plaintiff did not complete the symbol search and coding portions of the examination. [Tr. 360]. However, Ms. Garland stated that while Plaintiff's WAIS-IV scores "were most likely a low estimation of his ability," she "suspects [Plaintiff] is no more than borderline IQ." [Tr. 360]. Ms. Garland's opinion provided a provisional diagnosis of BIF, however, she noted that Plaintiff's "test results today are not thought to be an accurate reflection of the client's ability." [Tr. 361]. Therefore, ALJ Dowd assigned partial weight to Ms. Garland's opinion because she noted that Plaintiff's score was an "underrepresentation of his capacity." [Tr. 30].

Next, ALJ Dowd assigned little weight to the previous opinion of consultative examiner Brian Humphreys, Psy.D., who examined Plaintiff on August 22, 2011. [Tr. 32, 378]. Dr. Humphreys performed a mental assessment and estimated that Plaintiff's "level of intelligence is in [the] low end of borderline intellectual functioning range," and thus, Plaintiff "would be moderately limited in his ability to understand adequately." [Tr. 382]. Additionally, Dr. Humphrey's reported Plaintiff's Global Assessment of Functioning ("GAF") score as a 55. [*Id.*]. ALJ Dowd noted that Dr. Humphreys "estimated [Plaintiff] to operate within the borderline range of intellectual functioning, although as previously noted, the lack of valid IQ scores makes it difficult to confirm a cognitive impairment." [Tr. 30]. Therefore, ALJ Dowd assigned only partial weight to Dr. Humphreys' opinion, citing Plaintiff's inconsistent reporting of daily suicidal ideation, and his finding that Plaintiff's impairments cause moderate limitations in concentration and persistence. [Tr. 32]. ALJ Dowd also considered the previous opinion from consultative examiner, Jeffrey Summers, M.D., who examined Plaintiff on March 10, 2011 [Tr. 343], but he

9

assigned little weight to Dr. Summers' opinion because Plaintiff "did not extend full effort at the consultative examination." [Tr. 31].

The ALJ also reviewed several consultative examinations after Plaintiff's second application for benefits. ALJ Dowd assigned little weight to the opinion of consultative examiner Thomas S. Dake, M.D., who examined Plaintiff on March 1, 2014. [Tr. 31, 414].[2] Dr. Dake diagnosed Plaintiff with low back pain with radicular pain to the right lower extremity with positive straight leg raising sitting and supine on the right, a probable torn left rotator cuff, obesity, and hypertension. [Tr. 417]. Jeffrey A. Uzzle, M.D. examined Plaintiff on April 15, 2016 [Tr. 443], and completed a medical source statement assessing Plaintiff's hip and back problems [Tr. 433–440]. ALJ Dowd assigned partial weight to Dr. Uzzle's opinion, stating "his offered functional analysis belies the minimal limitations he observed in the physical examination, particularly regarding [Plaintiff's] ability to stand and walk in only one[-]hour intervals or sit for only two hours at a time." [Tr. 31]. Additionally, Dr. Uzzle noted that Plaintiff's cooperation with the examination was limited, and his effort was fair, at best. [Tr. 445].

Plaintiff was also consultatively examined by Larry F. Brown, Ph.D. on September 23, 2014. [Tr. 426]. Dr. Brown performed a clinical interview and mental status evaluation, in addition to reviewing state agency records, and diagnosed that Plaintiff was suffering from alcohol abuse, although apparently in remission, depressive disorder, and personality disorder. [Tr. 429]. Therefore, Dr. Brown opined that Plaintiff was markedly limited in his ability to work with the public, moderately to markedly limited in adaption, and moderately limited in his ability to persist

---

[2] Although the ALJ referred to the opinion of "Dr. Thomas," the Court notes that the ALJ cited to the portion of the record containing Dr. Dake's opinion, and properly discussed the findings set forth in the opinion. [Tr. 31].

10

and concentrate, as well as ability to do complex and detailed work. [*Id.*]. ALJ Dowd assigned great weight to Dr. Brown's opinion, as it was generally consistent with the medical record. [Tr. 32].

Therefore, ALJ Dowd properly performed a *de novo* review of the evidence relating to Plaintiff's intellectual functioning, and while acknowledging ALJ Richardson's previous finding that Plaintiff's BIF was a severe impairment, found there was insufficient evidence to establish Plaintiff was operating in a BIF range. *See, e.g.*, *Snyder v. Comm'r of Soc. Sec.*, No. 1:17-cv-486, 2018 WL 4658813, at *3 (W.D. Mich. Sept. 28, 2018) (finding the ALJ properly satisfied *Earley* by "effectively re-open[ing] [the previous] ALJ['s] decision and performed a lengthy *de novo* review of the evidence" from before the alleged onset date in the previous application); *Brent v. Comm'r of Soc. Sec.*, Case No. 17-12654, 2018 WL 4403418, at *2–3 (E.D. Mich. Sept. 17 2018) (holding that pre-*Earley* ALJ sufficiently "conducted an independent review of the evidence"); *Kamphaus v. Comm'r of Soc. Sec.*, No. 2:17-cv-11828, 2018 WL 3800243, at *5 (E.D. Mich. July 23, 2018) ("It is clear to the Undersigned that ALJ Deming did not simply apply *res judicata* principles and adopt ALJ Kalt's findings 'lock, stock and barrel,' but instead gave new consideration and analysis" to the new evidence.), *report and recommendation adopted by*, 2018 WL 3770045 (E.D. Mich. Aug. 8 2018).

Although portions of the new evidence reviewed by ALJ Dowd did not relate to Plaintiff's intellectual functioning, the Sixth Circuit in *Earley* also stated that due to the principles of "[f]inality, efficiency, and the consistent treatment of like cases . . . it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." 893 F.3d at 933; *see Dunn v. Comm'r of Soc. Sec.*, No. 1:17-cv-634, 2018 WL

11

4574831, at *3 (W.D. Mich. Sept. 25, 2018) (remanding where the ALJ "did not 'start[ ] the process anew,'" but rather as the ALJ simply adopted the previous ALJ's RFC findings, "he did not perform a *de novo* review of the medical record with respect to that new claim"); *Cassaday v. Comm'r of Soc. Sec.*, No. 1:17-cv-630, 2018 WL 4519989, at *3 (W.D. Mich. Sept. 21, 2018) (reversing where the ALJ's decision was not consistent with *Earley*'s requirement of independent review, as "if ALJ Zimmerman was bound to adopt ALJ Holmes' findings made on July 7, 2014, and give deference to the findings in that opinion, then she did not have the ability to perform a *de novo* review of the medical record to determine whether plaintiff was disabled after that date").

Accordingly, ALJ Dowd properly considered Plaintiff's social and intellectual functioning, as he performed a review of the medical record, including opinions from Dr. Garland, Dr. Humphreys, and Dr. Brown. Additionally, the ALJ acknowledged the previous ALJ's findings and the new evidence consisting of additional consultative examinations and Plaintiff's continued supoptimatal effort throughout his psychological consultative examinations. Therefore, the Court finds that the ALJ satisfied the Sixth Circuit's holding in *Earley*, as well as properly considered Plaintiff's functional limitations due to his intellectual and social functioning in determining his RFC. ALJ Dowd's RFC determination included limitations on Plaintiff's ability to understand, remember, and carry out simple, routine and repetitive tasks, with simple work-related decisions and few workplace changes, and no interaction with the general public and occasional interaction with coworkers and supervisors. [Tr. 27].

Lastly, the Court notes that any potential error under *Drummond* would be harmless due to the VE's testimony during the disability hearing. In cases where "the current RFC is less claimant-favorable but the jobs relied on by the current ALJ in support of his/her finding of lack of disability

12

do not require the additional capacity, any error was harmless." *Ford v. Berrhill*, No. 5:16-CV-115-LLK, 2017 WL 2531588, at *3 (W.D. Ky. June 9, 2017) (noting three categories of harmless *Drummond* errors). From a harmless error perspective, the only significant differences between the two RFC determinations that Plaintiff points to is that the previous RFC limited Plaintiff to casual and superficial contact with his coworkers, and that his supervision should be direct and non-confrontational. *See* [Doc. 20 p. 13]; [Tr. 76].

Although Plaintiff admits that during the hearing, ALJ Dowd asked the VE a hypothetical incorporating ALJ Richardson's RFC, Plaintiff claims that the VE's response to this hypothetical was based on the definition of pushing and pulling. [Doc. 20 p. 13]. However, the VE clarified that due to her interpretation of pushing and pulling, she did not find that such a hypothetical individual would be able to perform the same jobs as those identified by the previous VE, including as a food preparation worker, cleaner/housekeeper, and solderer. [Tr. 63]. Rather, the VE did find that a hypothetical individual incorporating ALJ Richardson's RFC, including direct and non-confrontational supervision, could perform work as an office helper, order caller, and textile checker. [Tr. 64]. Then, the VE testified that a hypothetical individual with the limitations contained in ALJ Dowd's RFC could perform the same jobs—as an office helper, order caller, and textile checker. [Tr. 65].

Therefore, because no social functioning limitation contained in the RFC determinations performed by ALJ Richardson or ALJ Dowd would preclude work as an office helper, order caller, or textile checker, any potential violation of *Drummond* would be harmless error. *See Barker v. Astrue*, No. 5:09-CV-1171, 2010 WL 2710520, at *6 (N.D. Ohio July 7, 2010) ("[A]ny error with respect to this [fact that the prior RFC limited Plaintiff to no interaction with the public] is harmless because the VE testified that the three jobs he identified. . . required no interaction with the

13

public"); *cf. Showman v. Berryhill*, No. 1:17-CV-2017, 2018 WL 4055610, at *13 (N.D. Ohio Aug. 9, 2018) (holding violation of *Drummond* constituted basis for remand because the VE did not address a hypothetical question including the exact mental limitations of the prior RFC, including a limitation avoid placing the plaintiff in confrontational situations), *report and recommendation adopted by*, 2018 WL 4052160 (N.D. Ohio Aug. 23, 2018).

## B.     Listing 12.05

Plaintiff briefly raises the argument that the ALJ failed to consider the applicability of Listing 12.05 for an intellectual disability.  [Doc 20 p. 6].  The ALJ found that Plaintiff did not function in a BIF range, and thus, it was not a severe impairment.  [Tr. 25].  Therefore, the ALJ did not assess whether Plaintiff met or medically equaled the severity of Listing 12.05.

At Step Three of the sequential evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings because they "describe conditions 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'"  *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 433 (6th Cir. 2016) (quoting 20 C.F.R. § 416.925(a)).  Each listing, including Listing 12.05, "describes an impairment in terms of its medical criteria—its signs, symptoms, and diagnostic indicators."  *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  Plaintiff bears the burden of proving every element of a listing.  *Id.*; *see, e.g.*, *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  "Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings, rather than a judgment based on all relevant factors for an individual claimant, the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation."  *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing 20 C.F.R. §§

14

416.925(d), 416.926; *Sullivan*, 493 U.S. at 532).

Listing 12.05, which pertains to intellectual disability, provides:

Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, OR D are satisfied.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.[3]  Accordingly, to qualify as disabled under Listing 12.05, the following three requirements must be met: "(1) 'significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested' before age 22; (2) a valid IQ score between 60 and 70; and (3) a physical or mental impairment 'imposing an additional and significant work-related limitation of function.'" *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 433 (6th Cir. 2016) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05); *accord Golden v. Comm'r of Soc. Sec.*, 591 F. App'x 505, 506 (6th Cir. 2015) (stating "[claimant's] IQ scores on their own fail to establish that her intellectual functioning was significantly subaverage"); *Foster v. Halter*, 279 F.3d 348, 354–55 (6th Cir. 2001).

Neither the listings nor the Sixth Circuit require the ALJ to "address every listing" or "to discuss listings that the applicant clearly does not meet." *Sheeks v. Comm'r of Soc. Sec.,* 544 F. App'x 639, 641 (6th Cir. 2013); *see, e.g.*, *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x

---

[3] The regulation for Listing 12.05 has been updated since this case began. *See* 81 Fed. Reg. 66, 138-01 (Sept. 26, 2016).  The current version of Listing 12.05 now has only two paragraphs, A and B. *See Jones v. Comm'r of Soc. Sec.*, No. 1:16-cv-68-SKL, 2017 WL 5015526, at *3 n.1 (E.D. Tenn. Aug. 22, 2017).  However, because neither party raises this as an issue and because the current version of Listing 12.05 continues to require evidence of deficits in adaptive functioning and requires evidence that the intellectual disorder began prior to the claimant reaching age 22, the update to the regulation does not affect the analysis provided herein. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

15

426, 432 (6th Cir. 2014). The ALJ should analyze a relevant listing where the record raises "a substantial question as to whether [the claimant] could qualify as disabled" under a listing. *Abbott v. Sullivan,* 905 F.2d 918, 925 (6th Cir. 1990); *see also Smith-Johnson*, 579 F. App'x at 432.

Here, the ALJ failed to discuss Listing 12.05, as the ALJ found that the evidence was insufficient to establish Plaintiff's BIF was a severe impairment. [Tr. 28]. It is reversible error for an ALJ to fail to address a listing only if Plaintiff can show the record raises a "substantial question" as to whether his impairments met or medically equaled the severity of the listing. *See Smith-Johnson*, 579 F. App'x at 432 (citing *Sheeks*, 544 F. App'x at 642; *Abbot*, 905 F.2d at 925). Plaintiff "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* at 432. "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

First, the ALJ held that the IQ test administered during Plaintiff's consultative examination by Ms. Garland was invalid, as she noted that the score was an underrepresentation of Plaintiff's capacity due to his inconsistent effort. [Tr. 30]. To be "valid," an IQ score must reflect the "plaintiff's true abilities, as demonstrated by his or her performance at work, household management and social functioning." *Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268, 269 (6th Cir. 1991). The ALJ is responsible for making the factual findings regarding the validity of IQ scores. *See Baker v. Comm'r of Soc. Sec.*, 21 F. App'x 313, 315 (6th Cir. 2001) (affirming the ALJ's rejection of the plaintiff's IQ scores as inconsistent with the record and noting that "the ALJ should examine test results of this sort to assure consistency with daily activities and behavior").

The ALJ properly held that Plaintiff's IQ test was invalid due to Ms. Garland's full evaluation and Plaintiff's inconsistent effort. *See Jackson v. Comm'r of Soc. Sec.*, No. 1:13-cv-

16

572, 2014 WL 6673613, at *6 (S.D. Ohio Nov. 21, 2014) (citing *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x. 454, 462 (6th Cir. 2012)) ("The ALJ may choose to disregard IQ scores that would normally lead to a finding of disability when those scores were undermined by a doctor's full evaluation."); *see, e.g.*, *Lax v. Astrue*, 489 F.3d 1080, 1086–87 (11th Cir. 2007) (affirming ALJ's decision to reject validity of IQ scores when consultative examiner believed they were unreliable because Plaintiff had been uncooperative during testing); *Miller v. Colvin*, No. 3:14-CV-1668-JO, 2015 WL 5772050, at *2 (D. Ore. Sept. 29, 2015) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Soto v. Sec'y of Health & Human Servs.*, 795 F.2d 219, 222 (1st Cir. 1986)) (holding "the fact that doctors on multiple occasions have found [Plaintiff] to be less than credible is a legitimate reason for the ALJ to question the validity of Dr. Field's IQ test").

Additionally, the ALJ did not find Plaintiff to be functioning in a BIF range, let alone subaverage intellectual functioning within the meaning of Listing 12.05. *See Golden v. Comm'r of Soc. Sec.,* 591 Fed. App'x 505, 506 (6th Cir. 2015) (stating "[Plaintiff's] IQ scores on their own fail to establish that her intellectual functioning was significantly subaverage"). ALJ Richardson also found that Plaintiff did not meet Listing 12.05, and Plaintiff fails to establish how he would meet every element of the listing. [Tr. 74]; *see, e.g.*, *Banks v. Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-2571, 2017 WL 4334114, at *9 (N.D. Ohio Sept. 5, 2017) (holding it was not error for the ALJ to fail to discuss Listing 12.05, as a prior ALJ found that although Plaintiff was found to be within the BIF range, Plaintiff did not meet Listing 12.05, and "absent new and material evidence, the ALJ was not required to discuss whether [Plaintiff] met the criteria in Listing 12.05"), *report and recommendation adopted by*, 2017 WL 4310665 (N.D. Ohio Sept. 27, 2017).

Accordingly, the ALJ properly did not address whether Plaintiff met Listing 12.05, as he did not find Plaintiff's BIF to be a severe impairment [Tr. 25, 28], and found Plaintiff's IQ scores

were invalid [Tr. 28]. *See Simmons v. Berryhill*, No. 5:17-cv-004-D, 2018 WL 577243, at *4 (E.D. N.C. Jan. 10, 2018) (holding the plaintiff failed to establish that he satisfied the criteria of Listing 12.05, as "the ALJ properly rejected the results of an IQ test [Plaintiff] contends support his claim"), *report and recommendation adopted by*, 2018 WL 576845 (E.D. N.C. Jan. 26, 2018).

Ultimately, Plaintiff argues that the ALJ's failure to develop the record with respect to a valid IQ score was harmful error, as Plaintiff claims that he likely would have met Listing 12.05 with a valid IQ test in connection with his illiteracy and limitations in social functioning. [Doc. 20 p. 9]. Therefore, the proper question before the Court is whether the ALJ failed to develop the record with respect to Plaintiff's IQ testing.

### C.      Failure to Develop the Record

Plaintiff also asserts that the ALJ failed to develop the record, as the ALJ did not order an additional examination to establish a valid IQ score. [Doc. 20 p. 9]. Plaintiff notes that the ALJ found that insufficient evidence existed to establish that Plaintiff functioned within a BIF range, as no valid IQ scores existed. [*Id.*]; *see* [Tr. 28]. However, the Commissioner asserts that the ALJ was not required to order a second set of IQ tests due to Plaintiff's inconsistent effort during the consultative examination with Ms. Garland and Dr. Summers, as well as during subsequent consultative examinations with Dr. Uzzle and Dr. Brown. [Doc. 22 p. 9].

The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 416.917. Additionally, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). The ALJ had no "special, heightened duty to develop the record" in this case because

18

Plaintiff was represented by counsel. *Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002). Further, it is not error to fail to obtain additional evidence where the record contains a "considerable amount of evidence" pertaining to the claimant's limitations. *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013). However, the ALJ has the ultimate responsibility to ensure that a claimant receives a full and fair hearing, *Richardson v. Perales*, 402 U.S. 389, 411 (1971), which includes a duty to fully and fairly develop the record. *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986).

Ultimately, the ALJ found that "the record contains no valid IQ scores to establish" that Plaintiff was in the BIF range, and thus, there was "insufficient evidence to establish borderline intellectual functioning is severe." [Tr. 28]. As the Court has previously stated, the ALJ properly found that Plaintiff's previous IQ test was invalid, due to his inconsistent effort and Ms. Garland's evaluation notes.

In the present case, the ALJ properly considered the medical record as a whole in considering Plaintiff's RFC, and thus was not required to further develop the record. In *Robertson v. Commissioner of Social Security*, the Sixth Circuit held the ALJ was not obligated to order an additional examination where the record contained a "considerable amount of medical evidence" relevant to the claimant's limitation and "resulting functional capacity." 513 F. App'x 439, 441 (6th Cir. 2013).

First, the ALJ's ultimate RFC determination reflects that he did not find that Plaintiff had a severe impairment stemming from his intellectual deficits or that Plaintiff was in a BIF range. The ALJ also analyzed Plaintiff's "paragraph B" criteria when assessing his mental limitations, finding that Plaintiff has moderate restrictions in activities of daily living, as Plaintiff is able to live independently, and "is entirely reliant on himself for care." [Tr. 26]; *see Anderson v. Colvin*,

19

No. 1:16-cv-139-SKL, 2017 WL 3221664, at *5–7 (E.D. Tenn. July 27, 2017) (holding the ALJ did not fail to develop the record by declining to order additional intelligence testing as the ALJ discussed Plaintiff's "paragraph B" criteria and found that "Plaintiff was not entirely credible"). While Plaintiff claims that the ALJ's failure to develop the record resulted in harmful error, as he would likely have met Listing 12.05 due in part to his marked illiteracy [Doc. 20 p. 9], ALJ Dowd noted that Plaintiff "was able to read, understand, and complete paperwork in conjunction with this claim." [Tr. 26].

The ALJ then found that Plaintiff has moderate difficulties in social functioning, as Plaintiff alleged that he has difficulty getting along with others. [*Id.*]. Ultimately, the ALJ agreed with Dr. Brown and the non-examining state agency consultant, Frank Kupstas, Ph.D., who found that Plaintiff had moderate difficulties in social functioning. [*Id.*]; *see* [Tr. 107]. Lastly, the ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace— in accordance with the opinions of the non-examining state agency consultants and Dr. Brown. [Tr. 26]. *See, e.g.*, *Lawler v. Astrue*, 512 F. App'x 108, 11 (2d Cir. 2013) (holding the ALJ was not required to obtain a new IQ score because the ALJ "did consider [Plaintiff's] mental abilities when [she] calculated his RFC. The ALJ noted several different medical opinions about [Plaintiff's] ability to remember and follow instructions, perform simple tasks, and engage in unskilled work").

Next, as the Court has previously discussed, Plaintiff was consultatively examined by Dr. Brown after his second application for benefits. Dr. Brown opined that Plaintiff was markedly limited in his ability to work with the public, moderately to markedly limited in adaption, and moderately limited in his ability to persist and concentrate, as well as ability to do complex and detailed work. [Tr. 31, 429]. The ALJ assigned great weight to Dr. Brown's opinion, as it was

20

generally consistent with the medical record. [Tr. 32]. Based on Dr. Brown's opinion, the ALJ noted that Plaintiff "is limited to understanding, remembering, [and] in carrying out simple, routine, and repetitive tasks performed in a work environment free from fast-paced work." [Tr. 31]. Therefore, the ALJ properly evaluated the medical record as a whole with respect to Plaintiff's mental and intellectual impairments by considering Plaintiff's "paragraph B" criteria, as well as consultative psychological examinations. *See Pollard v. Astrue*, No. 1:10–cv–714, 2011 WL 7006245, at *7–8 (S.D. Ohio Oct. 20, 2011) (holding "the ALJ did not abuse his discretion in failing to obtain additional psychological [and IQ] testing," as "Plaintiff was specifically evaluated by [a consultative examiner] in order to obtain current information about her mental impairments and two state agency psychologists reviewed the record and provided opinions"), *report and recommendation adopted by*, 2012 WL 95426 (S.D. Ohio Jan. 12, 2012).

The ALJ also noted Plaintiff's history of inconsistent effort during consultative examinations, specifically with respect to psychological consultative examinations. [Tr. 26, 30, 32]. While the ALJ discussed Plaintiff's "suboptimal effort" during his examination with Ms. Garland, he stated that Plaintiff "only demonstrated hostile or mistrustful behavior when meeting with psychological consultative examiners." [Tr. 32]. Rather, the ALJ discussed that Plaintiff was "noted to demonstrate normal mood and affect" during his physical consultative examination with Dr. Dake. [Tr. 26]. Further, Dr. Brown commented that Plaintiff "was hardly a forthcoming interviewee." [Tr. 428]. Ultimately, the ALJ properly considered Plaintiff's suboptimal effort when evaluating the medical record, including the decision whether to order additional IQ testing. *See, e.g.*, *Roberson v. Berryhill*, No. CV 16-05455-KES, 2017 WL 1173907, at *6 (C.D. Cal. Mar. 29, 2017) ("Plaintiff's argument boils down to an assertion that the ALJ had a legal duty to order another round of tax-payer-funded IQ testing in the hope that Plaintiff would make a sincere effort

21

the second time around so that the test would yield accurate results. The ALJ's duty to develop the record fully and fairly does not extend so far."); *Hughes v. Colvin*, No. 3:14-CV-230, 2015 WL 4430965, at *5 (S.D. Miss. July 17, 2015) (noting the failure to have a valid IQ test "is not the fault of the ALJ, who after the hearing sent [Plaintiff] for a comprehensive mental status examination that included IQ and achievement testing. The results were, however, considered invalid because of [Plaintiff's] failure to put forth effort during the exam").

Additionally, the Court notes that Plaintiff, represented by his prior counsel, did not request additional IQ testing, although he did request a physical consultative examination at the administrative hearing. [Tr. 57]. Plaintiff subsequently was consultatively examined by Dr. Uzzle about his right hip, right leg, and right arm pain. *See Webb v. Comm'r of Soc. Sec.*, No. 1:12-cv-984, 2013 WL 6795609, at *6 (S.D. Ohio May 31, 2016) (noting Plaintiff did not request additional development of the record concerning a challenged discrepancy in IQ scores), *report and recommendation adopted by*, 2016 WL 4467561 (S.D. Ohio Aug. 23, 2016); *Anderson v. Colvin*, No. 4:13-1622, 2014 WL 1042442, at *6 (S.D. Tex. Mar. 18, 2014) (considering that Plaintiff "represented by prior counsel, did not request further testing").

Accordingly, Plaintiff's argument that the ALJ's decision should be remanded for further development of the record concerning his intellectual functioning is without merit, as the ALJ considered the medical record and evidence as a whole in considering Plaintiff's RFC.

### D. Conflict with DOT Job Titles

Relying on VE testimony at step five, the ALJ determined that other work existed in the national economy that Plaintiff could perform given his RFC, including as an office helper, *Dictionary of Occupational Titles* ("DOT") #239.567-010, order caller, DOT #209.667-014, and textile checker, DOT #221.587-010. [Tr. 35]. Plaintiff argues that conflicts exist between the

22

ALJ's RFC determination and the description of the DOT job titles. [Doc. 20 p. 14–17]. Here, the ALJ noted that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained" in the DOT. [Tr. 33]. During the hearing, however, the ALJ failed to ask the VE whether her testimony was consistent with the DOT.

Social Security Ruling 00-4p addresses the use of VE testimony and other occupational resources in the evaluation of disability claims. 2000 WL 1898704, at *1 (Dec. 4, 2000). The ruling explains that in making disability determinations, the agency relies "primar[ily] on the DOT . . . for information about the requirements of work in the national economy." *Id.* at *2. However, because "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," VE testimony is appropriate to resolve more complex vocational issues and "may be able to provide more specific information about jobs or occupations than the DOT." *Id.* at *2-3. The ruling imposes an affirmative duty on the ALJ to ask about any possible conflicts between the VE's testimony and information provided in the DOT. *Id.* at *4. If a conflict is identified by the VE, the ALJ must "obtain a reasonable explanation for the apparent conflict" before the ALJ can rely on the VE's testimony. *Id.*; *see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603–05 (6th Cir. 2009).

Although the ALJ failed to question the VE about whether her testimony was consistent with the DOT, such failure was harmless as Plaintiff fails to show an actual conflict between the VE's testimony and the DOT. *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 436 (6th Cir. 2016) ("[A]n ALJ's failure to inquire about a nonexistent conflict is necessarily harmless . . . ."); *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) (citing *Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009) ("[F]inding 'the ALJ's error in not inquiring about potential

23

conflicts [to be] harmless' [when] no conflicts existed between the VE's testimony and the DOT's job descriptions.")); *Kerr v. Comm'r of Soc. Sec.*, No. 2:13–CV–457, 2014 WL 4243771, at *3 (S.D. Ohio Aug. 26, 2014) ("[W]here the Plaintiff fails to demonstrate an actual conflict, courts have consistently held that an ALJ's failure to comply with SSR 00–4p's inquiry requirement constitutes harmless error.").

With respect to the office helper occupation, Plaintiff claims that he could not perform the position because his RFC limits him to simple, routine, and repetitive tasks, and the job requires a variety of tasks. [Doc. 20 p. 14]. Further, Plaintiff contends that the occupation is given a V rating, instead of a rating of R for repetitive work. [*Id.*]. However, Plaintiff fails to establish how the RFC limitations are in conflict with the description of the position. Ultimately, the duties described in the DOT job description for an office helper may be properly characterized as simple, routine, and repetitive. *See Lewis v. Colvin*, No. 1:14-CV-1654-SMS, 2016 WL 397626, at *5 (E.D. Cal. Feb. 2, 2016) ("Using the office helper position as an example, each task described may be simple and repetitive. Plaintiff's limitation to simple, repetitive tasks does not preclude her from performing a variety of such tasks."); *Baldwin v. Comm'r of Soc. Sec.*, No. 3:13-cv-389, 2015 WL 4540436, at *5 (S.D. Ohio Feb. 24, 2015) (holding Plaintiff waived argument that she could not perform office helper position because of limitation to simple and repetitive tasks, but "[a]ssuming, *arguendo*, that such argument was adequately presented, the Court finds no merit to Plaintiff's position").

Next, Plaintiff submits that a conflict exists between the RFC limitation of occasional interaction with coworkers and supervisors, and no interaction with the public, and the job description of an order caller. [Doc. 20 p. 14]. Plaintiff claims that the position of an order caller "requires the worker to read and call out instructions to others," and thus requires "more interaction

24

than the ALJ determined he is capable of." [*Id.* at 14–15]. However, the Commissioner correctly states that the description requires speaking and signaling with people that is "not significant." *See* DOT #209.667-014, *available at* 1991 WL 671807. Therefore, Plaintiff has failed to demonstrate that his restrictions on interaction with coworkers, supervisors, and the public is in conflict with the position of an order caller.

Lastly, Plaintiff asserts that the position of textile checker is in conflict with his RFC limitation to work performed in an environment free from fast-paced work decisions, as the job requires attaining precise set limits. [Doc. 20 p. 15]. However, Plaintiff has failed to establish that the requirement of attaining precise limits is in conflict with carrying out simple, routine, and repetitive tasks in an environment free from fast-paced work decisions. Rather, Plaintiff solely claims that the requirement "does not seem appropriate." [*Id.*].

Additionally, the Court notes that any potential error with respect to this position was harmless because even if the textile checker job was excluded, the total number of jobs in the office helper and order caller positions would still constitute a significant number of jobs—120,300 and 225,000 nationwide. [Tr. 33]; *see Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) ("Even if we agree that the ALJ's finding included jobs precluded by [claimant's] exertional and non-exertional limitations, the ALJ's count of 2000 jobs [for one position] available in the third category withstands [claimant's] challenge."); *accord Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902 (6th Cir. 2016) (holding 6,000 in national economy jobs "fits comfortably" within what courts have found significant).

Ultimately, as the VE testified that Plaintiff could perform multiple jobs, and these jobs do not conflict with the DOT and exist in significant numbers in the national economy, the ALJ's failure to question the VE about whether her testimony was consistent with the DOT was harmless.

25

Therefore, the VE's testimony that Plaintiff could perform work existing in significant numbers in the national economy is supported by substantial evidence in the record.

## V.      CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[4] Plaintiff's Motion for Judgment on the Pleadings [**Doc. 19**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 21**] be **GRANTED**.

                              Respectfully Submitted,

                              United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Case 3:17-cv-00435-TAV-HBG     Document 23     Filed 01/11/19     Page 26 of 26
PageID #: 579